No.  11-30198

_____

In the
United States Court of Appeals
for the Fifth Circuit

_____

ERROL HOUSTON.,

Plaintiff-Appellant,

v.

CITY OF NEW ORLEANS, *et al.*

Defendant-Appellee.

_____

## PLAINTIFF/APPELLANT ERROL HOUSTON'S PETITION FOR REHEARING EN BANC

_____

Respectfully submitted by:

Justin P. Harrison, La No. 33575
P.O. Box 56157
New Orleans, LA 70156
(504) 522-0628
jharrison@laaclu.org
*Senior Staff Attorney for the*
*ACLU Foundation of Louisiana*

Craig Freeman, La Bar No. 25672
2205 Myrtle Avenue
Baton Rouge, LA 70806
(225) 252-2049
cfreem1@bellsouth.net
*Cooperating Attorney for the*
*ACLU Foundation of Louisiana*

*Attorneys for Appellant Errol*
*Houston, Jr.*

## <u>Certificate of Interested Persons</u>

Undersigned counsel certifies these persons and entities as described in the

fourth sentence of Rule 28.2.1 have an interest in the outcome of this case:

1. Errol Houston, Plaintiff

2. Justin Harrison, Counsel for Plaintiff

3. Craig Freeman, Counsel for Plaintiff

4. ACLU Foundation of Louisiana, Counsel for Plaintiff

5. City of New Orleans, Defendant

6. Leon Cannizzaro, Defendant, District Attorney for the City of New Orleans

7. Warren Riley, Defendant, Former Superintendent of the NOPD

8. Fred Herman, Counsel for Defendant Cannizzaro

9. Thomas Barbera, Counsel for Defendant Cannizzaro

10. James Mullaly, Counsel for Defendant City of New Orleans

11. Eraka Williams, Counsel for Defendant

12. Isaka R. Williams, Counsel for Defendant

13. Franz L. Zibilich, Counsel for Defendant

14. Ronal Serpas, Current Superintendent of the NOPD

/s/ Justin Harrison
Counsel for Plaintiff

## **Statement of Counsel for Rehearing**

Pursuant to Fed. R. App. P. 35(b)(1), counsel certifies that:

1. Rehearing is appropriate because the Panel decision conflicts with established Fifth Circuit and Supreme Court precedent on both the Second and Fourteenth Amendments.

2. Rehearing is appropriate because the Panel decision involves the following question of exceptional importance:

   a. Whether the 14th Amendment requires an individual whose property has been seized to avail himself of state procedural remedies before filing a §1983 action in federal court, even where the property deprivation was complete before the individual was on notice of his state-level rights.

   b. Whether the 2nd Amendment protects an individual's right to own a specific firearm as opposed to firearms in general, and whether the individual's 2nd Amendment rights are not violated when the government confiscates his firearm, so long as he can acquire another.

# Table of Contents

**Page**

Certificate of Interested Persons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Statement of Counsel for Rehearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Statement of the Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Necessary Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    **The Majority's Decision is Inconsistent with
      Supreme Court and Fifth Circuit Precedent on the
      Fourteenth Amendment** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      a.  **The §15:41(C) motion procedure is an inadequate
          postdeprivation remedy under the facts of this case** . . . . . . . . 3

      b.  **Even if a motion under §15:41(C) could be
          considered a predeprivation remedy, it would
          still be inadequate** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.   **The Panel Holding That The Second Amendment
      Does Not Protect "A Property-Like Right To A Specific
      Firearm" Conflicts With Supreme Court And Circuit
      Precedent** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**a. The right of a law-abiding citizen to keep his private,
legally owned handgun for purposes of self-defense
is at the core of the Second Amendment's protections** . . . . . . 11

**b. The decision fails to recognize that defendants' actions
impinge on Houston's right to "keep" his firearm** . . . . . . . . 11

**c. The Opinion's misinterpretation of Walters establishes
a novel, unjustified rule** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**d. The Opinion applies an erroneous standard of
constitutional review under Heller, because it applies
no standard at all** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Certificate of Compliance with Fed. R. App. P. 35(b) . . . . . . . . . . . . . . . . . . . . . 16

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# Table of Authorities

**Cases**:

*Barker v. Norman*, 651 F.2d 1107 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . 3, 4, 5

*Caine v. Hardy*, 943 F.2d. 1406 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*City of West Covina v. Perkins*, 525 U.S. 234 (1999) . . . . . . . . . . . . . . . . . . . . 9

*District of Columbia v. Heller*, 554 U.S. 570 (2008) . . . . . . . . . . . . . . . 10, 11, 12

*United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001),
*cert. denied*, 536 U.S. 907 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Foster v. Graves*, No. 09-0657-JJB-CN, 2010 WL 3724314
(M.D. La. 10 Aug. 2010) (Mag. J. Rep. & Rec.), *adopted*,
2010 WWL 3724195 (M.D. La. 16 Sept. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Heller v. District of Columbia*, 2011 WL 4551558 (D.C. Cir. Oct. 4, 2011) . . . . 15

*Lathon v. City of St. Louis*, 242 F.3d 841 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . 4

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982) . . . . . . . . . . . . . . . . . . . 3, 4

*Mathews v. Elridge*, 424 U.S. 319 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010) . . . . . . . . . . . . . . . . . . 10, 11

*In re Matter Under Investigation*, 15 So. 3d 972 (La. 2009) . . . . . . . . . . . . . . . . 5

*State v. Baynes*, 678 So. 2d 959 (La. Ct. App. 4th Cir. 1996) . . . . . . . . . . . . . . . 8

*State v. Feeback*, 434 So. 2d 466 (La Ct. App. 2 Cir. 1983) . . . . . . . . . . . . . . . . 6

*United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363 (1971) . . . . . . . . 9

*Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 4, 5, 13, 14

*Zinermon v. Burch*, 494 U.S. 113 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

**Statutes and Rules**:

La R.S. §15:41(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**Exhibits**:

Exhibit A – Panel Opinion

Exhibit B – La R.S. §15:41

Case: 11-30198    Document: 100    Page: 8    Date Filed: 03/28/2012

## Statement of the Issues

1.  Whether the 14th Amendment requires an individual deprived of property to avail himself of state procedural remedies before filing a §1983 action in federal court, even where the property deprivation was pursuant to official government policy and was complete before the individual knew of his state-level rights.

2.  Whether the 2nd Amendment protects an individual's right to own a specific firearm as opposed to firearms in general, and whether the individual's 2nd Amendment rights are not violated when the government confiscates his firearm, so long as he can acquire another.

## Statement of the Case

Plaintiff Houston brought a §1983 action alleging, among other claims, that defendants Cannizzaro, Riley, and the City of New Orleans violated his Second and Fourteenth Amendment rights. Rec. Doc. 5. Cannizzaro moved to dismiss, asserting misjoinder and absolute immunity, Rec. Doc. 25. Without reaching the immunity issue, the district court dismissed the Second and Fourteenth Amendment claims against Cannizzaro, holding that the DA had not violated Houston's associated rights. Rec. Doc. 30. Defendants City and Riley then moved similarly, Rec. Doc. 38, and the court dismissed those Second and Fourteenth Amendment claims as well. Rec. Doc. 61. Houston thereafter dismissed his remaining claims against Cannizzaro and filed this appeal on the Second and

Fourteenth Amendment issues. Rec. Docs. 65, 68. On appeal, a panel of this Court affirmed the dismissals over one dissent. Opinion, **Exhibit A**.

## Statement of the Necessary Facts

Houston owns a Glock Model 22 .40-caliber pistol, which he maintains to protect himself and his family from neighborhood crime. He has a valid concealed-carry permit, no criminal record, and his gun is properly registered. Rec. Doc. 5.

On July 5, 2008, NOPD officers stopped Houston and his passenger at a DUI checkpoint. A car search allegedly revealed a small amount of marijuana. Because Houston had his firearm at the time, he was arrested for felony possession of a firearm with a controlled substance, and the gun was seized. Rec. Doc. 5 ¶ 1.

On August 7, 2008, the DA refused Houston's charges. *Id*. Houston then requested his gun back, both by letter and appearances at the DA's office. *Id*. ¶¶ 15-18, 20. The DA refused, citing a policy of keeping all arrest-seized firearms for the limitations period of the underlying offense,[1] *Id*. ¶ 19, here six years.

Houston responded with this suit. Rec. Doc. 1.[2] After limited discovery, the district court dismissed Houston's claims, and Houston appealed. Rec. Docs. 65, 68. On appeal, by a vote of 2 to 1, a panel of this Court affirmed, holding that Houston had failed to state claims under the Second or Fourteenth Amendments.

---

[1]    At oral argument before the Panel, counsel for the DA confirmed the existence of that policy. Panel Opinion, Elrod, J., dissenting, n.6.

[2]    The DA responded by having Houston arrested again, based on the same facts as his initial arrest, but those charges again were refused by the city attorney. Rec. Doc.

## Argument

**I.    The Majority's Decision is Inconsistent with Supreme Court and Fifth Circuit Precedent on the Fourteenth Amendment.**

In holding that Houston failed to state a procedural due process claim, the majority departed from the Supreme Court's holdings in *Mathews v. Elridge*, 424 U.S. 319 (1976), *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436-437 (1982), *Zinermon v. Burch*, 494 U.S. 113 (1990) and their progeny, as well as this Court's own holdings in *Caine v. Hardy*, 943 F.2d. 1406, 1413 (5th Cir. 1991) and *Barker v. Norman*, 651 F.2d 1107 (5th Cir. 1981). The dissent expressed serious concerns about these conflicts, and en banc review is necessary to correct them and restore Houston's Fourteenth Amendment rights.

### A.    The §15:41(C) motion procedure is an inadequate postdeprivation remedy under the facts of this case.

Houston alleges that his gun is held pursuant to DA policy, Rec. Doc. 5, ¶19, and the DA's counsel acknowledged that at oral argument. Opinion, p. 18, n.6, Elrod, J., dissenting. Therefore, this case primarily turns on whether, under these facts, a property return motion under §15:41(C) is a pre- or postdeprivation remedy. If the former, it must meet the straightforward procedural due process standards set by the Supreme Court in *Mathews v. Elridge*, 424 U.S. 319 (1976). If the latter, Houston's failure to seek it is immaterial, as no postdeprivation remedy will cure a deprivation under an established policy. *Logan v. Zimmerman Brush*

*Co.*, 455 U.S. 422, 436-437 (1982); *Caine v. Hardy*, 943 F.2d. 1406, 1413 (5th Cir. 1991). The majority did not address this dichotomy, but as the dissent notes, a §15:41(C) motion is at best a postdeprivation measure.

In *Walters v Wolf*, 660 F.3d 307, 310 (8th Cir. 2011) the Eighth Circuit held that a St. Louis, Missouri police chief's policy of indefinitely retaining all arrest-seized firearms until court-ordered return actually involved two property deprivations: (1) one upon arrest, supported by probable cause and thus not requiring predeprivation process, and (2) another that, by virtue of the retention policy, occurred automatically when the basis for retention no longer existed:

> The pivotal deprivation is the City's and Chief Wolf's continued refusal to return Walters's handgun and ammunition after the St. Louis Circuit Court dismissed the unlawful-use-of-a-weapon charge on October 23, 2007, or sometime thereafter when authorities deactivated the Edmundson County warrant for Walters's arrest. *The constitutionally impermissible deprivation commenced on one of those two dates…*

*Id.* at 315, emphasis added.[3] The Eighth Circuit's conclusion seems a reasonable evolution of this Court's own holding in *Barker v. Norman*, 651 F.2d 1107 (5th Cir. 1981). There, this Court recognized that continued police retention of allegedly stolen property was distinct from initial seizure and could result in a constitutional deprivation:

---

[3]    The Eighth Circuit also relied on its earlier holding in *Lathon v. City of St. Louis*, 242 F.3d 841, 843 (8th Cir. 2001): "[t]he pivotal deprivation in this case was not the initial seizure of the ammunition and weapons, but the refusal to return them without a court order after it was determined that these items were not contraband or required as evidence in a court proceeding."

Obviously, it is one thing to say that Officer Norman was justified in seizing the property in the first place, and *entirely another to say that he was justified in retaining it under the possibly different set of circumstances that existed when and if it became clear that the property was not going to be used as evidence against Barker and Barker demanded its return.*

*Id.* at 1131, emphasis added. For Houston's purposes, the key holding of *Walters* was that the second deprivation occurred automatically, by operation of official policy, the moment the deprivation was no longer justified, as the DA here has a similar policy. Houston was arrested and his firearm seized on July 5, 2008, Rec. Doc. 5, p.3. Charges were *nolle prossed* a month later on August 7th. *Id.* Applying *Walters*, it was on August 7th, automatically and by operation of the DA's retention policy, that the second deprivation occurred, rendering anything later, including a §15:41(C) motion, a postdeprivation remedy.

The majority here did not address that element of *Walters*, distinguishing it instead solely by noting that Missouri law does not afford a procedural remedy to owners of arrest-seized property, and limits recovery to post-deprivation replevin actions, whereas La R.S. §15:41(C) provides such a remedy as "part and parcel of a criminal proceeding." Opinion at 9, *citing In re Matter Under Investigation*, 15 So. 3d 972, 984 (La. 2009). Nevertheless, a remedy "part and parcel of a criminal proceeding" does not account for either (1) the automatic nature of the second deprivation once the DA decided to keep the firearm after criminal proceedings had terminated, or (2) the extremely limited nature of criminal proceedings here.

The first point turns on the timing of the relevant deprivation, as discussed above. The second is a practical one flowing from the first: as Judge Elrod notes, Dissent, p.17, if a deprivation occurred by operation of DA policy upon the refusal of charges, then §15:41(C) affords no predeprivation remedy, because the "deprivation" occurred before Houston knew it. Until Houston learned of the *nolle prosse*, he had no reason to think he could request his gun back, and no reason to seek its return under §15:41(C). Moreover, even if he had known and filed accordingly, he would have lost, as §15:41(C) requires that the property no longer be needed as evidence, *State v. Feeback*, 434 So. 2d 466, 467-68 (La Ct. App. 2 Cir. 1983),[4] and prior to the *nolle prosse*, the DA's office arguably had that need.

The majority cited no case in which a party challenged via §15:41(C) a government policy of holding all seized property without exception, and it cited no case in which a party filed a §15:41(C) motion prior to a *nolle prosse*, let alone a *nolle prosse* that followed the initial seizure by less than a month. In support of its ruling about which property return statute controls, Opinion at 7, the majority did cite several cases in which §15:41(C) motions generally were used to petition for return of firearms. However, in all of those cases, the property owners were

---

[4] Indeed, even if Houston had known about §15:41(C), the period between his arrest and the City's refusal of charges – the period during which, under *Walters*, a §15:41(C) motion would arguably have qualified as a predeprivation remedy – was hardly a month. It would have been procedurally and substantively pointless for Houston to file a motion for return of his gun during that time, mere days after his arrest on felony gun charges and prior to the City's decision not to prosecute.

charged with *and ultimately convicted of* the crimes for which their property was being held as evidence. The government was justified in its pretrial retention (because the cases were going to trial); the owners were on notice of the risk of a second, permanent property deprivation; and they filed their §15:41(C) motions either during lengthy pretrial proceedings, or after conviction but before the property was finally forfeited. *See Foster v. Graves*, No. 09-0657-JJB-CN, 2010 WL 3724314 (M.D. La. 10 Aug. 2010) (Mag. J. Rep. & Rec.) (guns and other things seized upon plaintiff's arrest in 1983 and used as trial evidence in 1985; §15:41(C) motion filed in 2003, nearly *twenty years after conviction*, for return of *only the property not used as evidence at trial*, which included the guns), *adopted*, 2010 WWL 3724195 (M.D. La. 16 Sept. 2010). There, the U. S. District Court for the Middle District of Louisiana described a motion under §15:41(C) *as an appropriate post-deprivation remedy* for the state's random and unauthorized failure to return the property. *Id.* at 13. *See also State v. Baynes*, 678 So. 2d 959, 960 (La. Ct. App. 4th Cir. 1996) (guns and other items seized in April 1988 upon arrest for burglary; §15:41(C) motion filed more than a year later, shortly before trial  ultimately leading to conviction); and *State v. Feeback*, 434 So. 2d 466 (La Ct. App. 1983) (guns and other property seized incident to arrest in 1982; §15:41(C) not filed for nearly two years, after conviction of related offenses).

More importantly, in all of those cases, the default property return scheme was that seized, noncontraband firearms no longer needed as evidence were returned to their owners, as long as the owners were entitled to that return and followed proper procedure. That is precisely Houston's situation: a lawfully owned firearm, seized pursuant to an arrest for which charges were dropped, is no longer needed as evidence. But the DA's default property return scheme as to firearms is the opposite: seized, noncontraband firearms will *not* be returned to their owners for any reason, until the time for prosecution has expired. The first scheme affords proper predeprivation procedure and sufficient due process; the second does not.

### B.    Even if a motion under §15:41(C) could be considered a predeprivation remedy, it would still be inadequate.

Even if §15:41(C) provides a predeprivation remedy, it is inadequate. The majority addressed this issue only briefly, affirming strictly on the basis that Defendants were not obligated to inform Houston of his rights under §15:41(C)[5]. Opinion at 8. Apart from the fact that the DA's policy of holding the gun for six years led Houston to believe that he *had no right to request his gun back*, lack of notice was not the only constitutional argument Houston raised on appeal.

---

[5] Given the dispute over which Louisiana property return statute controls here, La R.S. §15:41(C) or La R.S. §40:1798, Houston's rights were not so clear. Due process does not require police to provide the owner of seized property with notice of state law remedies, so long as those remedies are clear and published. *See City of West Covina v. Perkins*, 525 U.S. 234, 241-42, 119 S.Ct. 678 (1999)

As Judge Elrod noted in dissent, p.18, a straightforward application of the *Mathews* factors, briefed at length before the Panel, suggests that the majority overvalued Defendants' need to keep the firearm once it was clear no prosecution was forthcoming and where less restrictive measures were available, and likewise undervalued Houston's fundamental Second Amendment right to his gun, *compare United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 373-74 (1971) (seizure of allegedly obscene materials unconstitutional under the First Amendment unless followed by a prompt judicial proceeding, either a criminal prosecution or a forfeiture action, "no more than 14 days from seizure of the goods to the institution of judicial proceedings for their forfeiture and no longer than 60 days from the filing of the action to final decision in the district court."). For those reasons, *en banc* review is warranted.

## II.   The Panel Holding That The Second Amendment Does Not Protect "A Property-Like Right To A Specific Firearm" Conflicts With Supreme Court And Circuit Precedent.

The panel's decision conflicts with Supreme Court precedent, and risks throwing this Court's own Second Amendment jurisprudence into disarray. The majority holds that the state's ongoing refusal to return a legally owned, private handgun seized by police from a law-abiding individual does not implicate the Second Amendment. The majority also holds that there is no cause of action under the Second Amendment where the alleged deprivation is of one firearm as opposed

to all. Those rules, if allowed to stand, would reduce to an illusion the Second Amendment right to "keep" one's own arms against government infringement.

As the dissent notes, the Opinion contravenes *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held that the Second Amendment protects an individual right to keep and bear arms, and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), which held that the right is fundamental and applies to the states through the Fourteenth Amendment. Dissent at 10. It is also directly contrary to this Court's landmark decision in *United States v. Emerson*, 270 F.3d 203 (5th Cir. 2001), *cert. denied*, 536 U.S. 907 (2002). For the reasons stated herein and in Judge Elrod's well-reasoned dissent, rehearing en banc should be granted.

### A.    The right of a law-abiding citizen to keep his private, legally owned handgun for purposes of self-defense is at the core of the Second Amendment's protections.

Until it was taken from him and unlawfully not returned, Houston possessed his legally owned handgun for the purpose of "protect[ing] himself and his family against a rash of crime in his neighborhood." Rec. Doc. 5 ¶ 12. *Heller* and *McDonald* make it clear that the right of law-abiding people to keep their own firearms for purposes of self-defense is at the core of the Second Amendment's protections. "[T]he inherent right of self-defense has been central to the Second Amendment right…." *Heller*, 554 U.S. at 628. Handguns are "the most preferred firearm in the nation to 'keep' and use for protection of one's home and family...."

*Id*. at 628-29. The Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id*. at 635. *McDonald* reiterated that "individual self-defense is 'the central component' of the Second Amendment right," and that "citizens must be permitted 'to use [handguns] for the core lawful purpose of self-defense'." *McDonald*, 130 S.Ct. at 3036. *McDonald* held and repeatedly emphasized that Second Amendment rights are "fundamental." *Id*. at 3036, 3037, 3040, 3042, 3050.

### B.    The decision fails to recognize that defendants' actions impinge on Houston's right to "keep" his firearm.

The panel majority resolved "whether the Second Amendment encompasses the claimed right" to keep one's own firearm in the negative in just three sentences. The panel averred: "The right protected by the Second Amendment is not a property-like right to a specific firearm, but rather a right to keep and bear arms for self-defense." Opinion at 5, citing *Heller*, 554 U.S. at 628-30. While *Heller* clearly held that individuals have a right to keep and bear arms for self-defense, it emphatically did *not* say that an individual has no right to keep the firearm he already owns. The panel then stated:

> Houston has not alleged defendants prevented his "retaining or acquiring other firearms". *Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011) (holding no Second Amendment violation when plaintiff's firearm was not returned after court dismissed criminal charge against him). Therefore, he has not stated a violation of his Second Amendment right to keep and bear arms.

The holding that the Second Amendment is not even implicated by the seizure and continuing retention of Houston's handgun is directly contrary to *Heller*. The Second Amendment provides that "the right of the people to *keep* and bear arms, shall not be infringed." *Heller* undertook a thorough analysis of each operative term of the Second Amendment. It quoted approvingly the definitions from two contemporary dictionaries by Samuel Johnson and Noah Webster:

> Johnson defined "keep" as, most relevantly, "[t]o retain; not to lose," and "[t]o have in custody." [citation omitted] Webster defined it as "[t]o hold; to retain in one's power or possession."

*Heller*, 554 U.S. at 582. All of those terms indicate continuous, present possession of a particular item, not the ability to acquire a substitute in the future. Because of defendants' actions, Houston did not "retain" his firearm; he did "lose" it; he does not have it in his "custody"; he does not "hold" it; he has not retained it in his "power or possession." His Second Amendment right to "keep" his private arm has unquestionably been obstructed.[6]

This Court has also made it clear that the Second Amendment protects private arms already owned by individuals. *Emerson* unequivocally stated that "the Second Amendment protects the right of individuals to *privately keep* and bear *their own firearms*…" *Emerson* at 264; *see also id*. at 260 (Amendment "protects

---

[6]   As noted by Judge Elrod, denying particular exercises of an enumerated constitutional right (so long as other exercises of the right are permitted) would be considered intolerable in other contexts, such as First and Fourth Amendment rights. Dissent at 13.

the right of individuals…to *privately possess* and bear *their own firearms*, such as the pistol involved here, that are suitable as personal, individual weapons…").

### C.    The Opinion's misinterpretation of *Walters* establishes a novel, unjustified rule.

The majority asserts that Houston must allege that the defendants prevented his "retaining or acquiring other firearms." Opinion at 5 (citing *Walters*). But Houston had no notice that such a novel and unjustified rule would be applied. *Walters* was decided several months after completion of briefing in this appeal.

Furthermore, as discussed at length *supra*, *Walters* found it **unlawful** under the Due Process Clause to retain the seized firearm after charges were dismissed. The Eighth Circuit believed that "Walters's valid Due Process claim addresses the gravamen of his complaint," and that he sought "a meaningful procedural mechanism for return of his lawfully seized firearm enabling him to exercise the individual right of self-defense protected by the Second Amendment." *Walters*, 660 F.3d at 317-18. Although declining to find a Second Amendment violation on that record (which, unlike this case, was decided on summary judgment), the Court did not "foreclose the possibility" that a plaintiff could show a violation of the Second Amendment resulting from "depriving an individual of a specific firearm that he or she otherwise lawfully possessed for self-defense." *Id*. at 318.

It is legal for individuals to own firearms in the United States, except for

felons, the mentally ill, and a few other narrow classes of people. Under the majority's ruling in this case, innumerable sane, law-abiding individuals whose firearms are seized and illegally retained would lose their right to allege that they cannot acquire another if they are too poor, are home-bound, or unable to travel to a gun dealer. The U.S. Census Bureau reports that 24.4% of persons in Orleans Parish were under the poverty line in 2006-2010.[7] They should not be at risk of losing their right to possess legally-owned handguns simply because they can't afford to buy another. It is unjustified and unworkable to make Second Amendment rights turn on surplus economic resources, ability to travel to purchase a firearm, or the location of gun dealers. It is unlikely that this Court would endorse a policy that deprived someone of the right to attend their church of choice on the grounds that different church is available down the street. Yet that is equivalent to what the majority did in this case: it told Houston that he doesn't need the firearm he owns because he can buy another one. The Second Amendment simply cannot be read to require someone to buy a replacement for something that they already own.

> ### D. The Opinion applies an erroneous standard of constitutional review under *Heller*, because it applies no standard at all.

Judge Elrod discusses two different approaches to Second Amendment

---

[7] *See* http://quickfacts.census.gov/qfd/states/22/22071.html, Last accessed 3/28/2012.

review advanced by courts of appeals.  Dissent at 10-13.  One is a two-step process in which the scope of the Second Amendment is first determined by textual and historical analysis.  For conduct within the scope, the second step is to apply heightened constitutional scrutiny.  The second approach, exemplified by Judge Kavanaugh's dissent in *Heller II* , relies exclusively on textual and historical analysis to determine whether particular conduct is protected.  *See Heller v. District of Columbia*, 2011 WL 4551558, at *21 (D.C. Cir. Oct. 4, 2011) (Kavanaugh, J., dissenting).  Both approaches require textual and historical analysis.  As Judge Elrod notes, because the "government has not marshaled any historical evidence that the Second Amendment categorically does not protect particular firearms, the majority errs in recognizing such an exception in this case."

## Conclusion

For the foregoing reasons, rehearing is appropriate.

Respectfully submitted by:

Justin P. Harrison, La Bar No. 33575
25672P.O. Box 56157
New Orleans, LA 70156
(504) 522-0628
jharrison@laaclu.org
*Senior Staff Attorney for the*
*ACLU Foundation of Louisiana*

Craig Freeman, La Bar No.
2205 Myrtle Avenue
Baton Rouge, LA 70806
(225) 252-2049
cfreem1@bellsouth.net
*Cooperating Attorney for the*
*ACLU Foundation of Louisiana*

*Attorneys for Appellant Erroll*
*Houston, Jr.*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY the following on this 28th day of March 2012:

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2) because this motion does not exceed 15 pages, excluding the parts of the motion exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Times New Roman, 14 point font.

/s/ Justin Harrison
JUSTIN HARRISON (#33575)
Attorney for Plaintiff/Appellant

## CERTIFICATE OF SERVICE

I hereby certify that I have served this brief and attached exhibits upon the Court and upon counsel for all parties, via electronic filing, this 28th day of March, 2012, and will immediately serve the appropriate paper and CD-ROM-based copies upon the parties and the Court.

/s/ Justin Harrison
JUSTIN HARRISON
Attorney for Plaintiff/Appellant

16

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 14, 2012

Lyle W. Cayce
Clerk

No. 11-30198

ERROL HOUSTON, JR.,

Plaintiff - Appellant

v.

CITY OF NEW ORLEANS; LEON CANNIZZARO, District Attorney for the Parish of Orleans; WARREN J. RILEY, Superintendent of the New Orleans Police Department,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BARKSDALE, GARZA, and ELROD, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In this action under, *inter alia*, 42 U.S.C. § 1983, Errol Houston, Jr., claims defendants violated his Fourteenth Amendment rights (to keep and bear arms, incorporated from Second Amendment, and to due process) by retaining his lawfully-seized firearm after the district attorney refused charges. The action was dismissed under Federal Rule of Civil Procedure 12. AFFIRMED.

No. 11-30198

## I.

As noted, dismissal was under Rule 12, as also discussed *infra*. Accordingly, the facts that follow are from the allegations in Houston's complaint.

Houston was arrested by New Orleans police officers on 5 July 2008. Pursuant to that arrest, Houston's firearm, a Glock 22 .40-caliber pistol, was seized. Approximately a month later, the district attorney entered *nolle prosequi* (abandonment of prosecution) on the charges against Houston.

Almost a year after his arrest, and following his requests for the return of his firearm being denied by the district attorney's office and the police department, Houston filed this action on 2 July 2009, claiming, *inter alia*, violations of the right to keep and bear arms and of due process, and seeking primarily the return of his firearm. Houston alleged he had been informed that the new district attorney had implemented a policy of not returning firearms seized during arrests.

Just over a month later, Houston again was arrested by New Orleans police officers. He was informed that a warrant for his arrest, on the charge of illegal possession of a firearm, had issued at the request of the new district attorney on 5 July, three days after this action was filed. That charge was also "nolle prossed". In an amended complaint, Houston added claims for retaliation and unlawful arrest.

Regarding the district attorney, Houston's right-to-keep-and-bear-arms and due-process claims were dismissed under Rule 12(b)(6) (failure to state claim). Subsequently, those claims against New Orleans and a former police superintendent were also dismissed, under Rule 12(c) (judgment on pleadings).

In so ruling regarding the Second Amendment and the district attorney, the district court concluded retention of the firearm was "reasonable . . . because firearms are needed as evidence in instituting criminal prosecution" and,

No. 11-30198

"[f]urthermore", that "[Houston] does not have a Second Amendment right to the particular firearm seized". Order and Reasons, at 7 (20 Sept. 2010). In its subsequent dismissal of that Second Amendment claim against New Orleans and the former police superintendent, the court further ruled: "law enforcement has a compelling interest in seizing weapons pursuant to a lawful arrest and as evidence of crimes"; and, "law enforcement narrowly tailors such seizures to those firearms involved in crimes and those firearms in possession of arrestees". Order and Reasons, at 9 (10 Dec. 2010).

For the due-process claim, the court ruled the firearm's retention did not violate due process because, *inter alia*: the firearm was "not a basic necessity of life"; defendants had an important interest in preserving evidence; and, Houston had not alleged he had exhausted state-law remedies, such as a contradictory motion (motion the non-moving party is likely, or should have the opportunity, to contest) for return of his firearm. Order and Reasons, at 9-10 (20 Sept. 2010); Order and Reasons, at 9 (10 Dec. 2010).

## II.

In district court, following the dismissal of his Second Amendment and due-process claims, Houston dismissed voluntarily his retaliation and unlawful-arrest claims. At issue are only those concerning the Second Amendment and due process.

Although both district court decisions noted factual allegations contained not in the complaint, but in the parties' memoranda for the motions, "matters outside the pleadings [were not] presented to . . . the court". Fed. R. Civ. P. 12(d). And, consistent with that, both decisions stated the issue as "whether [Houston] has *alleged sufficient facts* to show that Defendants deprived [him] of his constitutional rights". (Emphasis added.) For these and other reasons, the decisions were Rule 12 dismissals, not Rule 56 summary judgments.

No. 11-30198

Rule 12(b)(6) and 12(c) dismissals are reviewed *de novo*. *E.g.*, *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009). All well-pleaded facts are accepted as true and viewed in the light most favorable to Houston. *E.g.*, *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Viewing the facts, as pleaded, in that light, a motion to dismiss for failure to state a claim or for judgment on the pleadings should not be granted if the complaint provides "enough facts to state a claim to relief that is plausible on its face". *Jebaco, Inc.*, 587 F.3d at 318 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## A.

The Second Amendment provides for "the right of the people to keep and bear Arms". U.S. Const. amend. II. That right belongs to the individual, and "central" to it is the "core lawful purpose of self-defense". *District of Columbia v. Heller*, 554 U.S. 570, 628-30 (2008). The Amendment is "fully applicable to the States" through the Fourteenth Amendment because the right to keep and bear arms is "fundamental to our scheme of ordered liberty". *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026, 3036 (2010) (emphasis omitted).

Houston urges strict-scrutiny review of defendants' alleged policy of retaining seized firearms. *See, e.g.*, *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973) ("strict judicial scrutiny [has been found] appropriate in reviewing legislative judgments that interfere with fundamental constitutional rights"). Before reaching that level-of-review question, however, whether the Second Amendment encompasses the claimed right must be decided. *Heller v. District of Columbia*, No. 10-7036, 2011 WL 4551558, at *5 (D.C. Cir. 4 Oct. 2011); *Ezell v. City of Chicago*, 651 F.3d 684, 701-02 (7th Cir. 2011); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010). *But see Nordyke v. King*, 644 F.3d 776, 783 (9th Cir. 2011) ("The

4

No. 11-30198

Supreme Court's reasoning in *Heller* and *McDonald* suggests that heightened scrutiny does not apply unless a regulation *substantially* burdens the right to keep and to bear arms for self-defense." (emphasis added)).  Put another way, if defendants' alleged evidence-retention policy does not "impose[] a burden on conduct falling within the scope of the Second Amendment's guarantee", our inquiry is complete.  *Marzzarella*, 614 F.3d at 89.

Just as some regulation of speech–*e.g.*, of obscenity and defamation–is "outside the reach" of the First Amendment, so, too, is some regulation of firearms outside the reach of the Second.  *Ezell*, 651 F.3d at 702 (quoting *United States v. Stevens*, 130 S. Ct. 1577, 1584-85 (2010)).  *See also Heller*, 554 U.S. at 626-27, 627 n.26 (noting "the right secured by the Second Amendment is not unlimited" and listing "presumptively lawful" regulations).  The right protected by the Second Amendment is not a property-like right to a specific firearm, but rather a right to keep and bear arms for self-defense.  *See Heller*, 554 U.S. at 628-30.

Houston has not alleged defendants prevented his "retaining or acquiring other firearms".  *Walters v. Wolf*, 660 F.3d 307, 318 (8th Cir. 2011) (holding no Second Amendment violation when plaintiff's firearm was not returned after court dismissed criminal charge against him).  Therefore, he has not stated a violation of his Second Amendment right to keep and bear arms.

## B.

The Due Process Clause of the Fourteenth Amendment provides:  "[N]or shall any State deprive any person of life, liberty, or property, without due process of law".  U.S. Const. amend. XIV, § 1.  To state a due-process claim, Houston must allege:  he has a property interest in the firearm; and, he has been deprived of that interest without due process of law.  *E.g.*, *Gentilello v. Rege*, 627 F.3d 540, 542 (5th Cir. 2010).  Property interests are "defined by existing rules or understandings that stem from an independent source such as state law".  *Bd.*

No. 11-30198

*of Regents v. Roth*, 408 U.S. 564, 577 (1972). "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Determining "what process is due" generally requires consideration of: the private interest affected; the risk of erroneous deprivation and the probable value of additional or substitute procedures; and, the government interest, including the burden of additional or substitute procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333 (internal quotation marks omitted).

Pursuant to accepting as true the well-pleaded fact in the complaint that Houston owns the seized firearm, he has alleged a deprivation of a property interest. Defendants maintain Houston did not allege that the deprivation has occurred without due process, however, because he did not allege he utilized the below-described procedure that could have afforded him a meaningful opportunity to be heard. Houston contends he nevertheless stated a due-process claim, without alleging he utilized that procedure, because, as a matter of law: the procedure was not available to him; or, in the alternative, due process required defendants to notify him of the procedure.

1.

Louisiana Revised Statutes § 15:41(C) provides, in relevant part: "Where the release of seized property is sought by a person claiming to be the owner, it shall be released only upon motion contradictorily with the clerk of court". Houston contends, as he did in district court, that the procedural remedy afforded by § 15:41 is unavailable where the seized property is a firearm. Houston maintains § 15:41 (disposition of *seized property*) is displaced by Louisiana Revised Statutes § 40:1798 (disposition of *seized firearms*), which applies to law enforcement, because the former is prefaced, "If there is a specific

No. 11-30198

statute concerning the disposition of the seized property, the property shall be disposed of in accordance with the provisions thereof". La. Rev. Stat. § 15:41(A). But the plain language of the mandate to law enforcement contained in §40:1798–which contains no procedural remedy for the owner of the seized property–does not preclude the remedy under § 15:41(C).

Instead, the better reading is that § 40:1798 displaces only § 15:41(B): "*If there is no such specific statute*, the following governs the disposition of property seized . . . ." La. Rev. Stat. §15:41(B) (emphasis added) (instructing property be returned, sold, transferred, or destroyed). *See also Foster v. Graves*, No. 09-0657-JJB-CN, 2010 WL 3724314 (M.D. La. 10 Aug. 2010) (Mag. J. Rep. & Rec.) (plaintiff sought return of seized firearms by § 15:41 motion), *adopted*, 2010 WL 3724195 (M.D. La. 16 Sept. 2010); *State v. Baynes*, 678 So. 2d 959 (La. Ct. App. 1996) (same), *overruled on other grounds by In re Matter Under Investigation*, 15 So. 3d 972 (La. 2009); *State v. Feeback*, 434 So. 2d 466 (La. Ct. App. 1983) (same).

2.

In the alternative, Houston maintains: "[T]he Due Process clause requires that the [district attorney] advise Houston not only of his right to petition for recovery of his firearm, but also of the manner in which such petition may be submitted". For that proposition, Houston cites *Ford v. Turner*, 531 A.2d 233 (D.C. 1987), which held plaintiff, an administratrix seeking the return of her deceased sister's firearms, was not given "notice reasonably calculated, under all the circumstances, to apprise [her] of the pendency of the action and afford [her] an opportunity to present [her] objections". *Id.* at 236 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In *Ford*, the police did not notify plaintiff of the initial seizure. *Id.* at 237. Nor did the D.C. Code provide constructive notice of plaintiff's right to contest the seizure because there were numerous statutes, with varying provisions, applicable to seized property. *Id.*

No. 11-30198

In contrast, Houston obviously had notice of the seizure of his firearm and the reason(s) for its being seized. Beyond that, defendants were "under no constitutional obligation to provide notice to the plaintiff of [the means for seeking return of his property]". *Baird v. Holton*, No. 10-0451 (BAH), 2011 WL 3663753, at *4 (D.D.C. 22 Aug. 2011) (holding due process did not require defendant, after criminal proceeding, to notify plaintiff of criminal procedure by which he could move for return of property). *See also Leyland v. Edwards*, 797 F. Supp. 2d 7 (D.D.C. 2011) (same). Similar to *Baird* and *Leyland*, 797 F. Supp. 2d at 11 n.5–where "the criminal proceeding in which Plaintiff was being prosecuted is governed by the Superior Court's Rules of Criminal Procedure [in the District of Columbia], and [D.C.] Rule 41(g) outlines the procedure by which seized items may be returned"–the provision outlining the procedural remedy available to Houston is found in the "Criminal Procedure" title and the "Code of Criminal Procedure Ancillaries" chapter of the Louisiana Revised Statutes. Moreover, the notes to the Rule of Criminal Procedure governing the disposition of seized property cross-reference § 15:41. La. Code Crim. Proc. Ann. art. 167 (West, Westlaw through 2011 Reg. Sess.).

The earlier-cited *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011), recently decided a case similar to the one at hand. In *Walters*, plaintiff claimed a city in Missouri and its police chief violated, *inter alia*, due process by refusing his informal requests for his seized firearm after a state court dismissed the charge against him. *Id.* at 309-10. The Eighth Circuit agreed, reasoning: the *Mathews* analysis, described *supra*, usually requires "some kind of a hearing *before* the State deprives a person of liberty or property", *id.* at 312 (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original)); and, the "pivotal deprivation" was defendants' refusal to return the firearm after the charge was dismissed, *id.* at 315. The summary judgment for defendants was vacated, based

No. 11-30198

on the court's holding: "[R]elegation to a post-hoc state tort action to address the deprivation is inherently insufficient". *Id.*

Unlike in Louisiana, the Missouri statute governing disposition of seized property does not afford a procedural remedy to owners of "weapons seized by an officer incident to an arrest". Mo. Rev. Stat. § 542.301.1(2). Rather, the only available remedy for the owner of a seized firearm is a separate action for replevin. *Lathon v. City of St. Louis*, 242 F.3d 841, 844 (8th Cir. 2001); *Elam v. Dawson*, 156 S.W.3d 807, 809 n.2 (Mo. Ct. App. 2005); *Castelli v. City of Bridgeton*, 792 S.W.2d 909, 910 (Mo. Ct. App. 1990). In Louisiana, on the other hand, the owner of a seized firearm may request its return simply by filing a contradictory motion in the criminal proceeding. La. Rev. Stat. § 15:41(C). *See also Matter Under Investigation*, 15 So. 3d at 984 ("a motion for return of property filed pursuant to La. R.S. 15:41 is part and parcel of a criminal proceeding").

As discussed, under Louisiana law, the proper remedy for seeking the return of seized property is to file a motion under § 15:41. *See Leyland*, 797 F. Supp. 2d at 10 ("the proper remedy for seeking the return of such property [in the District of Columbia] is to simply file a motion under Rule 41(g)"). Houston's complaint does not allege that he has done so; and, his justifications, as a matter of law, for not so alleging fail. Accordingly, he has not stated a due-process claim.

III.

For the foregoing reasons, the judgment is AFFIRMED.

No. 11-30198

JENNIFER WALKER ELROD, Circuit Judge, dissenting:

In holding that Houston's claim does not implicate the Second Amendment, the majority contravenes the Supreme Court's recent decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). As several of our sister circuits have recognized, *Heller* and *McDonald* dictate that the scope of the Second Amendment be defined solely by reference to its text, history, and tradition. Yet without textual exegesis or historical evidence, the majority concludes that Houston's claimed right to his firearm falls outside the scope of Second Amendment protection. In reaching this conclusion, it holds that the Second Amendment does not protect an individual's "property-like right to a specific firearm" unless the government has prevented him from "retaining or acquiring other firearms." This exception to the Second Amendment cannot be reconciled with *Heller* and *McDonald*.

Given my conclusion that Houston's claim implicates the Second Amendment, I must reach the question of what test courts should apply in evaluating Second Amendment claims, an open question in this circuit. In applying *Heller* and *McDonald*, most of our sister circuits have adopted a two-step approach to Second Amendment claims, step one of which is to determine whether the regulated activity falls within the scope of the Amendment—an exclusively textual and historical inquiry—and step two of which is to apply some level of heightened scrutiny (strict or intermediate) to regulations of Second Amendment-protected activity. Recently, however, Judge Kavanaugh of the D.C. Circuit has articulated an alternative approach, which dispenses with step two on the ground that *Heller* and *McDonald* rule out scrutiny analysis. In my view, unless and until the Supreme Court says differently, Judge Kavanaugh is correct that "*Heller* and *McDonald* leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny." *Heller*

10

No. 11-30198

*v. Dist. of Colum.*, — F.3d —, 2011 WL 4551558, at *23 (D.C. Cir. Oct. 4, 2011) (Kavanaugh, J., dissenting). The parties have not addressed whether the district attorney's policy is sufficiently rooted in the Second Amendment's text, history, and tradition. I would remand for the district court to consider that question in the first instance.

I also disagree with the majority's procedural due process analysis. Without any discussion or citation to relevant authority, the majority imposes the novel requirement that a well-pleaded due process claim must include an allegation that the plaintiff has attempted to vindicate his interest through the available judicial remedy provided by the state—the very remedy that Houston challenges as constitutionally inadequate. I would adhere to settled procedural due process principles and hold that Houston has stated a due process claim. Louisiana's postdeprivation judicial remedy is inadequate because this case does not fall within the *Paratt v. Taylor* exception to the general rule that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

## I.

*Heller* and *McDonald* make clear that courts may consider only the text and historical understanding of the Second Amendment when delimiting the Amendment's scope. The Supreme Court explained in *Heller* that it would require "an exhaustive historical analysis" to delineate "the full scope of the Second Amendment." 554 U.S. at 626. While declining that undertaking, the *Heller* Court identified as permissible several types of "longstanding" regulatory measures. *Id.* at 626–27. *Heller* then looked to "historical tradition" alone to reach its conclusion that the government may ban certain classes of "dangerous and unusual weapons." *Id.* at 627. Accordingly, the Court interpreted its prior decision in *United States v. Miller*, 307 U.S. 174 (1939), as establishing "only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled

No. 11-30198

shotguns," because "[t]hat accords with the historical understanding of the scope of the right." *Heller*, 554 U.S. at 625. In summing up its methodological approach, the Court emphasized that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Id.* at 634–35. The Court then reiterated that exceptions to the scope of the Second Amendment depend on "historical justifications." *Id.* at 635. Two years later in *McDonald*, the Court confirmed its historical approach, reassuring state governments that *Heller* "did not cast doubt on [certain categories of] longstanding regulatory measures." 130 S. Ct. at 3047 (controlling opinion of Alito, J.).

Several of our sister circuits have recognized that *Heller* and *McDonald* require a textual and historical approach to the Second Amendment's scope. *See Ezell v. City of Chi.*, 651 F.3d 684, 702–03 (7th Cir. 2011) (under *Heller* and *McDonald*, some gun regulations are categorically beyond the scope of the Second Amendment because they regulate activity unprotected by the right to keep and bear arms as publicly understood at the time of ratification); *United States v. Chester*, 628 F.3d 673, 678 (4th Cir. 2010) (*Heller* established that "determining the limits on the scope of the [Second Amendment] right is necessarily a matter of historical inquiry"); *United States v. Rene E.*, 583 F.3d 8, 12 (1st Cir. 2009) (*Heller* "identified limits deriving from various historical restrictions on possessing and carrying weapons. . . . These restrictions, as well as others similarly rooted in history, were left intact by the Second Amendment and by *Heller*."). *But see Nordyke v. King*, 644 F.3d 776, 783 (9th Cir. 2011) ("heightened scrutiny does not apply unless a regulation substantially burdens the right to keep and to bear arms for self-defense"). The fundamental flaw in the majority's analysis is its failure to confine itself to text and history in determining the scope of the Second Amendment, as *Heller* and *McDonald*

No. 11-30198

require.  Because the government has not marshaled any historical evidence that the Second Amendment categorically does not protect particular firearms, the majority errs in recognizing such an exception in this case.[1]

*McDonald* provides yet another reason why today's holding cannot be correct.  *McDonald* emphatically rejected the notion that the Second Amendment is "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." 130 S. Ct. at 3044–48; *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 484 (1982) ("[W]e know of no principled basis on which to create a hierarchy of constitutional values."). Today's holding cannot be squared with this guiding principle. In the context of other enumerated constitutional rights, an equivalent *per se* exception for particular exercises of the right at stake (so long as other exercises of that right are permitted) would be intolerable. Consider, for example, a court holding that the Free Speech Clause affords no protection against the government preventing the publication of a particular editorial in the *New York Times* because there are plenty of other newspapers that might publish the piece.  Or consider a court holding that the Fourth Amendment is inapplicable to the unreasonable seizure of a specific automobile so long as the government does not prevent the owner from borrowing, renting, or purchasing a replacement vehicle.[2] These examples should suffice to show the

---

[1] The majority's analogy to classes of speech that are unprotected by the First Amendment further underscores the need for historical evidence to establish a categorical exception.  Only "historically unprotected" categories of speech are beyond the scope of the First Amendment. *United States v. Stevens*, 130 S. Ct. 1577, 1586 (2010).

[2] Indeed, the Supreme Court  has expressly rejected this sort of reasoning in the First Amendment context: "'[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'" *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1975) (quoting *Schneider v. State of New Jersey, Town of Irvington*, 308 U.S. 147, 163 (1939)).  *Heller* itself rejected a strikingly similar argument: "It is no answer to say . . . that it is permissible to ban the possession of handguns so long as the possession of other firearms ( *i.e.*, long guns) is allowed." 554 U.S. at 629; *see also Heller*, 2011 WL 4551558, at *39 ("[T]hat's  a bit like saying books can be banned because people can always read newspapers.").

No. 11-30198

absurdity of courts recognizing categorical exceptions for each particular exercise of those rights.[3]  In carving out such an exception from the Second Amendment, today's majority impermissibly treats the Amendment as a "second-class right." *McDonald*, 130 S. Ct. at 3044.

Instead of undertaking the historical inquiry required by *Heller* and *McDonald*, the majority relies entirely on *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011), for its conclusion that Houston's claimed right to his particular firearm does not implicate the Second Amendment.[4]  *Walters*, however, emphasized that it did not endorse the *per se* rule that the Second Amendment does not protect particular firearms.  *Id.* at 318 ("We do not foreclose the possibility that some plaintiff could show that a state actor violated the Second Amendment by depriving an individual of a specific firearm.").  Moreover, although *Walters*'s Second Amendment holding is not entirely clear, it appears to be dependent, at least in part, on the court's prior determination that the plaintiff had stated a *valid* procedural due process claim.  *Id.* at 317 ("We believe Walters's valid Due Process claim addresses the gravamen of his complaint.").  Most importantly, insofar as *Walters* does support the majority's dismissive treatment of Houston's Second Amendment claim, we should not follow it.  Like today's holding, *Walters* is at odds with the Supreme Court's command that courts may consider only text and history in determining the scope of the Second Amendment.

---

[3] It bears emphasis that I include these examples not because I fear that today's rule will facilitate the adoption of equivalent exceptions to other Bill of Rights guarantees.  Instead, I include these examples to illustrate just how anomalous today's holding is.

[4] The majority also cites *Heller* for the proposition that "[t]he right protected by the Second Amendment is not a property-like right to a specific firearm, but rather a right to keep and bear arms for self-defense."  This citation is misleading, and *Heller* contains no such statement.  *Heller* unquestionably supports the second clause of the quoted sentence—that the Second Amendment protects the right to  keep and bear arms for self-defense—but provides no support for the first clause.  Rather, as discussed, the notion that the Second Amendment does not protect specific firearms is incompatible with *Heller*.

No. 11-30198

It is particularly unfortunate for our circuit to endorse the atextual, ahistorical rule that the Second Amendment does not protect particular firearms. In *United States v. Emerson*, 270 F.3d 203, 218–60 (5th Cir. 2001) (Garwood, J.), after an extensive consideration of the text and historical understanding of the Second Amendment, we held that the Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms." We were the first circuit so to hold. *See Parker v. Dist. of Columbia*, 478 F.3d 370, 380 (D.C. Cir. 2007) ("Federal appellate courts have largely adopted the collective right model [of the Second Amendment]. Only the Fifth Circuit has interpreted the Second Amendment to protect an individual right."). *Heller* vindicated *Emerson*. Yet today's majority flouts *Heller* and its imperative to consider only text and history in delimiting the Second Amendment's scope.

## II.

The majority leaves for another day the question of what test applies to Second Amendment claims. Unlike the majority, I must reach this question because in my view Houston's claim implicates the Second Amendment.

Until recently, almost every circuit court to address this issue has framed the question as a choice between intermediate and strict scrutiny. *See, e.g., Heller*, 2011 WL 4551558, at *8; *Ezell*, 651 F.3d at 701; *Chester*, 628 F.3d at 682; *United States v. Reese*, 627 F.3d 792, 801 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 96–97 (3d Cir. 2010). Judge Kavanaugh has recently elucidated an alternative approach, explaining that the Supreme Court's rejection of an interest-balancing approach also rules out strict and intermediate scrutiny—both forms of judicial balancing. *Heller*, 2011 WL 4551558, at *26–32 (Kavanaugh, J., dissenting). Judge Kavanaugh's dissenting opinion also carefully demonstrates that both *Heller* and *McDonald* repeatedly emphasized the central role of text, history, and tradition in analyzing Second

No. 11-30198

Amendment claims. *Id.* at *23–32. Indeed, *Heller* "prospectively blessed certain laws for reasons that could be (and were) explained only by history and tradition, not by analysis under a heightened scrutiny test." *Id.* at *30.

For essentially the reasons articulated in Judge Kavanaugh's convincing dissent, I would hold that the proper test for evaluating Second Amendment claims is as follows:

> Gun bans and gun regulations that are longstanding—or, put another way, sufficiently rooted in text, history, and tradition—are consistent with the Second Amendment individual right. Gun bans and gun regulations that are not longstanding or sufficiently rooted in text, history, and tradition are not consistent with the Second Amendment individual right.

*Id.* at *35. Because the parties have not briefed whether the district attorney's policy passes muster under this test, I would remand to the district court for consideration of this question.

## III.

With regard to Houston's procedural due process claim, I do not agree that Houston's claim fails because he has not alleged that he has utilized the judicial remedy provided by the state. The majority cites no authority for imposing this novel requirement and offers no justification for why this case requires us to announce this new rule. Thus, even assuming that the majority is correct that Houston could have filed a motion in state court under La. Rev. Stat. § 15:41(C) for the return of his firearm, that is irrelevant to the proper due process analysis in this case. When Houston filed his complaint, he had no reason to expect that his case would be thrown out for his failure to allege that he has sought relief pursuant to the very state procedure that he alleges is constitutionally inadequate.

I would resolve this case by applying established due process principles. Although the majority has not bothered to address the question, in my view, the proper approach is to begin by resolving the parties' dispute about whether to

No. 11-30198

classify § 15:41 as a predeprivation or postdeprivation remedy.[5]  The answer to this question is not perfectly straightforward because § 15:41 allows for the filing of a motion at any time, either before or after the district attorney "nolle prossed" the charges against Houston.  But the problem with classifying § 15:41 as a predeprivation remedy is that Houston could not have utilized § 15:41 to challenge the government's retention of his firearm after dropping charges until Houston knew that the District Attorney actually dropped charges and refused to return his firearm.  Thus, I would analyze § 15:41 as a postdeprivation remedy.

Under the Supreme Court's case law, postdeprivation remedies are only adequate in the narrow circumstances governed by *Parratt v. Taylor*, 451 U.S. 527 (1981), which "represent[s] a special case of the general *Mathews v. Eldridge* analysis." *Zinermon v. Burch*, 494 U.S. 113, 128 (1990).  Under the *Parratt* rule, postdeprivation remedies are acceptable only where the deprivation results from "a random and unauthorized act by a state employee" rather than "some established state procedure." *Parratt*, 451 U.S. at 541.  In that circumstance, because "the State cannot predict precisely when the loss will occur," *id.*, "the State cannot be required constitutionally to do the impossible by providing predeprivation process." *Zinermon*, 494 U.S. at 129.

This case is not governed by *Paratt*, but by the ordinary rule that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Id.* at 127.  According to Houston's complaint, the District Attorney refused to return Houston's firearm after dropping charges pursuant

---

[5] The relevant deprivation of property occurred at the moment the District Attorney dropped charges against Houston but decided to retain, rather than return, his firearm.  There was, of course, a prior deprivation when the government initially seized the weapon, but this was lawful because the seizure was supported by probable cause.  Only the second deprivation is at issue.  *See Walters*, 660 F.3d at 314–15 (distinguishing between these two distinct deprivations).

No. 11-30198

to an "established state procedure."[6]  *Parratt*, 451 U.S. at 541.  Thus, the deprivation was not "a random and unauthorized act by a state employee" that would make it impossible for the state to predict the deprivation and afford predeprivation process.  *Id.*  This conclusion also follows from this circuit's case law applying the *Parratt* rule.  In *Caine v. Hardy*, the en banc court held that *Parratt* bars a § 1983 procedural due process claim only if there are adequate state postdeprivation procedures and each of the following conditions is present: (1) "the deprivation must truly have been unpredictable or unforeseeable"; (2) "pre-deprivation procedures must have been impotent to counter the state actors' particular conduct"; and (3) "the conduct must have been 'unauthorized' in the sense that it was not within the officials' express or implied authority." 943 F.2d 1406, 1413 (5th Cir. 1991) (en banc).  Not one of these conditions is met here.

Even if § 15:41 is construed to be a predeprivation remedy, I still would hold, under a straightforward application of *Mathews v. Eldridge*, 424 U.S. 319 (1976), that the district court erred in dismissing Houston's procedural due process claim.  In my judgment, the district court undervalued the private interest and overvalued the government's interest.  The district court downplayed the weight of the private interest by reasoning that gun possession "is not a basic necessity of life, such as [welfare benefits] or employment."  But this analysis fails to account for the Supreme Court's description of the Second Amendment right to gun ownership as "fundamental," *McDonald*, 130 S. Ct. at 3037, and the reality that, in certain situations, an individual's ability to utilize a firearm in self-defense will be nothing less than a matter of life or death.  *See Heller*, 554 U.S. at 599 (individual self-defense is the "central component" of the Second Amendment).  The district court also gave significant weight to the

---

[6] Houston alleges that "[o]n approximately November 24, 2008, Mr. Houston was told that the new District Attorney, Defendant Cannizzaro, had implemented a new policy providing that firearms seized during arrests would not be returned."  At oral argument, counsel for the district attorney reaffirmed this policy.

No. 11-30198

government's "important interest in preserving evidence of crimes." There is no doubt that this is a powerful interest, but in my view it loses some of that strength where, as here, the government has dropped charges, has expressed no interest in re-indicting Houston, and has given no other indication of a need to retain the firearm. If, in a particular case, the government does still have a strong interest in preserving the firearm as evidence (for example, if the weapon is also evidence of another crime for which charges or an investigation are pending), it may assert that interest at the due process hearing.

In sum, I would hold that Houston has stated a due process claim because the postdeprivation judicial remedy provided for in § 15:41 is inadequate under these circumstances. If Houston prevailed on the merits of that claim, I would leave it to the district court, in the first instance, to grapple with what specific procedures the state must provide.

## IV.

"Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad." *Heller*, 554 U.S. at 634–35. As lower court judges, our narrow province in constitutional adjudication is to faithfully apply the Constitution as interpreted by the Supreme Court. Because today's decision runs afoul of *Heller*, *McDonald*, and *Zinermon*—all binding Supreme Court precedents—and our en banc precedent in *Caine*, I respectfully dissent.

CODE TITLE IV.  SEARCH WARRANTS

§41.  Disposition of property seized in connection with criminal proceedings

A.  If there is a specific statute concerning the disposition of the seized property, the property shall be disposed of in accordance with the provisions thereof.

B.  If there is no such specific statute, the following governs the disposition of property seized in connection with a criminal proceeding, which is not to be used as evidence or is no longer needed as evidence:

(1)  The seized property shall be returned to the owner, unless a statute declares the property to be contraband, in which event the court shall order the property destroyed if the court determines that its destruction is in the public interest; otherwise, Paragraph (2) of this Section shall apply.

(2)  If the seized property is contraband, and the court determines that it should not be destroyed, or if the owner of noncontraband property does not claim it within six months after its seizure, the court shall order:

(a)  A sale of the property at a nonjudicial public sale or auction, if the court concludes that such a sale will probably result in a bid greater than the costs of the sale.  The proceeds of the sale shall be administered by the court and used exclusively for the maintenance, renovation, preservation, or improvement of the court building, facilities, or records system.

(b)  If the court concludes that the cost of a public sale would probably exceed the highest bid, the court may order the property transferred to a public or a nonprofit institution or destroyed or may make such other court ordered disposition as it deems appropriate.

C.  Where the release of seized property is sought by a person claiming to be the owner, it shall be released only upon motion contradictorily with the clerk of court.  In all other cases the court may either render an ex parte order for the disposition of the property as herein provided on motion of any interested person, or on its own motion, or the court may require a motion contradictorily with the apparent owner or the person in possession of the property at the time of the seizure.

D.  Notwithstanding any provision of law to the contrary, an official criminalistics laboratory may destroy any controlled dangerous substance, controlled dangerous substance paraphernalia, or both, in its possession without an order of court after a period of five years from the date of seizure.  Any criminalistics laboratory intending to destroy a controlled dangerous substance, controlled dangerous substance paraphernalia, or both, pursuant to this Subsection shall give the seizing agency and the district attorney thirty days notice prior to such destruction.  In the case that the seizing agency or the district attorney object to such destruction, no destruction shall occur.

Acts 1983, No. 300, §1; Acts 1987, No. 614, §1; Acts 1989, No. 479, §1; Acts 1999, No. 1195, §1.